**SIGNED THIS: January 19, 2011**

_____
**MARY P. GORMAN**
**UNITED STATES BANKRUPTCY JUDGE**
_____

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| In Re ) | |
| ) | In Bankruptcy |
| BRENDA L. RABIDEAU, ) | |
| ) | Case No. 09-72721 |
| Debtor. ) | |

## O P I N I O N

Before the Court is the Debtor's objection to a claim filed by her ex-husband, Richard Smith.  Mr. Smith claims that the Debtor owes him $28,737.55 pursuant to several orders entered in the parties' state court dissolution of marriage case.  Mr. Smith asserts that all of the amounts owed to him are "domestic support obligations" and, therefore, that his claim is entitled to priority status for payment through the Debtor's Amended Chapter 13 Plan. The Debtor does not dispute that the amounts claimed are owed by her to Mr. Smith, but asserts that none of the amounts are

-1-

"domestic support obligations" entitled to priority status. For the reasons set forth herein, the Debtor's objection to Mr. Smith's claim will be sustained, and Mr. Smith's claim will be allowed only as a general unsecured claim.

**Factual and Procedural History**

Brenda L. Rabideau ("Debtor") filed her voluntary petition under Chapter 7 of the Bankruptcy Code on September 16, 2009. On January 12, 2010, Debtor filed a Motion to Convert her case to one under Chapter 13. An Amended Motion to Convert was filed on January 18, 2010. An order allowing the conversion was entered on February 9, 2010.

Debtor filed her Chapter 13 Plan on February 19, 2010, and her First Amended Chapter 13 Plan ("Amended Plan") on April 22, 2010. The Amended Plan provides for payment of Debtor's attorney fees, a debt secured by her automobile, and a *pro rata* dividend to unsecured creditors. The Amended Plan proposes no particular treatment for Mr. Smith's claim but, rather, includes his claim with other general unsecured claims.

Mr. Smith filed his priority claim on November 17, 2009, while the case was pending under Chapter 7. The claim totals $28,737.55 and consists of five parts. First, Mr. Smith claims $3000 plus $360.99 in interest based on an obligation of the Debtor to reimburse him for credit card debt he incurred to pay real estate

taxes on a home owned by the Debtor.  The Debtor's obligation to pay the $3000 was set forth in a Supplemental Judgment of Dissolution of Marriage ("Supplemental Judgment") entered by the state court on May 16, 2008.  Second, Mr. Smith claims $19,896.71 plus $161.52 in interest for payments the Debtor was ordered to pay in the Supplemental Judgment to Decatur Earthmover Credit Union ("DECU") for a mortgage loan which Mr. Smith signed related to the Debtor's home.  After the Debtor failed to make the required payments pursuant to the Supplemental Judgment, DECU filed a foreclosure suit and ultimately obtained a deficiency judgment against the Debtor and Mr. Smith in the amount of $19,896.71.

The final three parts of the claim relate to three separate state court orders entered in the dissolution of marriage case which required the Debtor to pay Mr. Smith's attorney fees for several motions he filed seeking to enforce the Debtor's obligations to him pursuant to the Supplemental Judgment.  On October 15, 2008, Mr. Smith was awarded $1575 in fees.  On February 4, 2009, Mr. Smith was awarded $1755.56 in fees.  On June 24, 2009, Mr. Smith was awarded $1705 in fees.  Mr. Smith claims that a total of $262.76 in interest has accrued on the three fee awards since each was entered.

Because a priority claim was on file but not provided for in the Amended Plan, the Amended Plan drew an objection to confirmation not only from Mr. Smith but also from the Chapter 13

Trustee.  The Debtor countered the objections to confirmation by filing her objection to the priority status of Mr. Smith's claim.

An evidentiary hearing on the Debtor's objection to the claim of Mr. Smith was held on December 8, 2010.  The matter is ready for decision.  This Court has jurisdiction to decide the issue before it.  28 U.S.C. §1334; 28 U.S.C. §157(a), (b)(1).  Hearings on the allowance or disallowance of claims are core proceedings.  28 U.S.C. §157(b)(2)(B).

**Legal Analysis**

Mr. Smith asserts that his claim is entitled to priority status because he alleges that all components of the claim are "domestic support obligations."  "Domestic support obligation" is a term introduced into the bankruptcy vocabulary by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA").  Generally, a "domestic support obligation" is a debt that is owed to a "spouse, former spouse, or child of the debtor" which is in the "nature of alimony, maintenance, or support" and was established by a "separation agreement, divorce decree, or property settlement agreement" or by some other "order of a court of record[.]"  *See* 11 U.S.C. §101(14A).

Although BAPCPA provided marital and child support obligations with a new name and a statutory definition, the concept of making a distinction between marital or divorce obligations which are in

the nature of support and those which are simply property settlement is not new.  A significant body of case law has developed over the years discussing the reasons why the distinction is important and the various factors which should be considered when determining the true nature of a marital or divorce obligation.  See, e.g., *In re Woods*, 561 F.2d 27 (7th Cir. 1977); *In re Reines*, 142 F.3d 970 (7th Cir. 1998); *In re Wright*, 184 B.R. 318 (Bankr. N.D. Ill. 1995).  Making the distinction between support obligations and property settlement obligations has always been important - and remains important notwithstanding the BAPCPA changes to the Code - in determining how marital claims should be treated and whether the marital obligations are dischargeable.  See *In re Hack*, 2009 WL 1392068 *at* *2, 6 (Bankr. C.D. Ill. May 14, 2009).

In Chapter 13 cases, in order to obtain confirmation, plans must provide for payment in full of claims entitled to priority under §507. 11 U.S.C. §1322(a)(2). "Domestic support obligations" are entitled to such priority.  11 U.S.C. §507(a)(1)(A).  Further, "domestic support obligations" are excepted from the general discharge granted to debtors upon completion of Chapter 13 plan payments.   11 U.S.C. §523(a)(5); 11 U.S.C. §1328(a)(2).   In contrast, property settlement obligations are not priority claims which must be paid in full under a Chapter 13 plan and are subject to being discharged upon completion of plan payments. 11 U.S.C.

§523(a)(15); 11 U.S.C. §1328(a)(2). Thus, the importance of the distinction between support and property settlement obligations is clear here. If the Debtor's obligations to Mr. Smith are "domestic support obligations," the Debtor must propose to pay them in full through the Amended Plan, and the obligations will not be discharged unless they are paid in full. On the other hand, if the obligations are property settlement debts, Mr. Smith is entitled to receive only his *pro rata* share of the funds available in the Amended Plan to pay general unsecured creditors and, upon successful completion of plan payments by the Debtor, any remaining balance due to Mr. Smith will be discharged.

In presenting their respective positions, both the Debtor and Mr. Smith relied on *In re Daulton*, 139 B.R. 708 (Bankr. C.D. Ill. 1992), as authority for outlining the factors that this Court should consider in ruling on the Debtor's objection to Mr. Smith's claim. The so-called *Daulton* factors include, *inter alia*, the length of the marriage, the age and health of the parties, whether there are children to be provided for, the employment status and future earning capacity of the parties, where the obligations are located and how they are labeled in the controlling court order, whether the parties had counsel, and whether there is any indication that the provisions at issue were intended to balance the relative incomes of the parties. *Id.* at 710.

Debtor's case in support of her objection to the priority

status of Mr. Smith's claim consisted solely of her testimony on the *Daulton* factors and her assertion that the evidence related to such factors in this case all suggests that her obligations to Mr. Smith established by the Supplemental Judgment are in the nature of property settlement rather than support.  The parties' marriage lasted just a little more than a year.  They were married in April 2005, and the initial judgment dissolving the marriage was entered November 16, 2006.  No children were born to or adopted by the parties during the marriage.  The Debtor was in her late 40s and Mr. Smith was in his early 50s at the time of the dissolution of marriage.  Neither the Debtor nor Mr. Smith had any known health problems at the time.  The Debtor worked for Blue Cross Blue Shield while Mr. Smith was employed by Caterpillar, and both parties' employment appeared stable at that time.  Each party was represented by counsel throughout the dissolution proceedings.  No labels were placed on Debtor's obligations to Mr. Smith in the Supplemental Judgment to suggest or imply that the state court intended the obligations to be in the nature of support.

Debtor also testified that, prior to the marriage, she had purchased the home where the parties resided during the marriage, and title to the home had remained solely in her name.  Thus, she asserted that, because she retained ownership after the dissolution of the marriage, she was assigned the debt associated with the home as part of the state court's division of property.  She denied that

the assignment of the debt to her was based on any evidence suggesting that Mr. Smith was in need of her support.

In support of granting priority status to his claim, Mr. Smith presented his own testimony and a number of exhibits. Mr. Smith did not dispute much of the testimony of the Debtor. Rather, Mr. Smith focused his presentation on an assertion that the state court was attempting to balance the incomes of the Debtor and Mr. Smith when it ordered the Debtor to reimburse Mr. Smith the funds used to pay real estate taxes and the mortgage to DECU. Mr. Smith introduced into evidence before this Court the same financial exhibits which had been introduced in the state court dissolution of marriage proceedings. The exhibits were very helpful to this Court in its efforts to determine the intent of the state court when it entered the Supplemental Judgment. Unfortunately, however, for Mr. Smith, the exhibits tend to undercut rather than support his argument that his claim is based on "domestic support obligations."

Four exhibits were introduced by Mr. Smith relating to the Debtor's financial condition at the time of the marriage dissolution. Debtor's 2004 income tax returns showed an annual gross income of $51,821 and her 2006 returns showed an annual gross income of $55,897. A pay stub from Blue Cross Blue Shield dated July 8, 2007, disclosed an annual pay rate at that time of $55,625. Additionally, the tax returns showed that, during the relevant

periods of time, the Debtor had two minor children residing with her, and her pay stub also disclosed that she claimed three deductions for tax withholding purposes.  An affidavit prepared by the Debtor for the dissolution proceedings disclosed that, in addition to her earnings, the Debtor was receiving $550 per month in child support from the father of her children.  On the affidavit, the Debtor estimated her combined monthly net income from earnings and child support to be $3366.18 and listed total monthly expenses for herself and her dependents as $3933.36.  Her expenses include the $865 per month payment to DECU which she was ordered to pay pursuant to the Supplemental Judgment.

    Mr. Smith also introduced into evidence before this Court his financial affidavit and one of his pay stubs which had been introduced in the dissolution of marriage proceedings.  The pay stub was apparently the only information introduced in the dissolution case regarding Mr. Smith's income at the time.  The pay stub is dated August 6, 2006, and indicates that it is for the 16th two-week pay period for the year.  The pay stub shows that Mr. Smith's gross earnings to date were $41,286.86.  If Mr. Smith's pay stub was representative of his actual earnings for the year - and there is no reason to think that it was not - it would indicate that Mr. Smith was on track to earn about $67,000 in 2006.  Mr. Smith's own testimony before this Court was that, during the time in question, he was working as much overtime as was available and

may have earned as much as $70,000 in his best year.

Mr. Smith's financial affidavit disclosed regular monthly living expenses of about $2000 and monthly debt payments totaling about $3000. Those debt payments include the $865 to DECU that the Debtor was ordered to pay. The debt payments also include amounts for three vehicles and a motorcycle. The documents suggest that Mr. Smith was supporting only himself and no other dependents at the time.

In comparing the respective financial positions of the parties at the time of the marriage dissolution, there is absolutely no evidence that the state court was attempting to balance the parties' incomes and provide support to Mr. Smith when it ordered the Debtor to pay the debts related to her home as part of the Supplemental Judgment. The Debtor's income at the time was less than the income of Mr. Smith and was not sufficient to meet all of the needs of the Debtor and her dependent children. In contrast, Mr. Smith's income was more than sufficient to meet his needs and, in fact, was high enough that he was also able to make three car payments and a motorcycle payment each month.

The evidence simply does not support Mr. Smith's position that the provisions of the Supplemental Judgment constitute "domestic support obligations." The obligations of the Debtor to Mr. Smith contained in the Supplemental Judgment constitute property settlement and, as such, his claim based on the provisions is not

entitled to priority status in this case.

As set forth above, Mr. Smith's claim also includes attorney fees that he incurred in his efforts to enforce the terms of the Supplemental Judgment. Mr. Smith's argument that the fees constitute "domestic support obligations" relied on his contention that the obligations he was enforcing when he incurred the fees were in the nature of support. Because that contention has been rejected, his argument that the fees are in the nature of support must also fail. The fees would be non-dischargeable only if they had been awarded based on the relative financial resources of the parties. See *Wright*, 184 B.R. *at* 326. Here, the fees were apparently awarded to compel compliance with the property settlement obligations and, therefore, are not in the nature of support.

For the reasons set forth above, the Debtor's objection to the claim of Mr. Smith will be allowed. The claim is determined to be in the nature of property settlement and not in the nature of support. Mr. Smith's claim will be denied priority status but will be allowed in the amount of $28,737.55 as a general unsecured claim.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

###